UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TYLER H.,

                             Plaintiff,

v.                                                            5:21-cv-01216 (GTS/ TWD)

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

OLINSKY LAW GROUP                        HOWARD D. OLINSKY, ESQ.
*Counsel for Plaintiff*
250 South Clinton Street - Suite 210
Syracuse, Ny 13202

SOCIAL SECURITY ADMINISTRATION      AMELIA STEWART, ESQ.
OFFICE OF THE GENERAL COUNSEL
*Counsel for Defendant*
625 JFK Building
15 New Sudbury Street
Boston, MA 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

      Tyler H. ("Plaintiff") commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or Commissioner") denying his applications for benefits. (Dkt. No. 1.) Plaintiff did not consent to the jurisdiction of a Magistrate Judge. (Dkt. No. 9.) The matter was referred to the undersigned for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3. Pending before the Court are the parties' cross-motions for judgment on the pleadings brought pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure. (Dkt. Nos. 15, 18.) For the reasons discussed below, the undersigned recommends Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1988, graduated high school, and completed several years of college but did not obtain a degree. (Dkt. No. 12 at 52.[1]) His prior employment included work as a flagger on a road paving crew. *Id*. He currently lives with his parents. *Id*. Initially, Plaintiff alleged disability due to autism spectrum disorder, social anxiety disorder, major depressive disorder, attention deficit disorder, and avoidant personality disorder. *Id*. at 219-29, 249.

### B. Procedural History

Plaintiff protectively filed for disability insurance benefits ("DIB") and supplemental security income ("SSI") on August 19, 2018, alleging disability beginning June 1, 2012. *Id*. These claims were initially denied on November 26, 2019. *Id*. at 79, 92. Thereafter, Plaintiff appeared with counsel at a hearing on March 3, 2021, before Administrative Law Judge ("ALJ") Robert A. Kelly. *Id*. at 79, 94-95, 125-30, 47-71. Plaintiff and a vocational expert ("VE") testified. *Id*. at 47-71. On March 19, 2021, the ALJ found Plaintiff not disabled. *Id*. at 8-30. In connection with his appeal to the Appeals Council, Plaintiff submitted additional evidence consisting of third-party statements from his mother and sister. *Id*. at 31-33, 39, 46, 217-18. On September 3, 2021, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. *Id*. at 1-7. This action followed. (Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 12. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. Page references to other documents identified by docket number are to the page numbers assigned by the Court's CM/ECF electronic filing system.

C. **The ALJ's Decision**

In his March 19, 2021, decision, the ALJ decided Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. (T. at 14.) Applying the five-step disability sequential evaluation, the ALJ determined Plaintiff had not engaged in substantial gainful activity since August 15, 2015, the amended alleged onset date. *Id*. At step two, the ALJ determined Plaintiff had the severe impairments of depression, generalized anxiety disorder, social anxiety disorder, autism spectrum disorder, attention deficit hyperactivity disorder, avoidant personality disorder, and an obsessive-compulsive disorder ("OCD"). *Id*. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 14-17. Before reaching step four, the ALJ concluded Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> He is able to understand, remember, carry out, and maintain pace for simple, routine and repetitive work tasks with no more than occasional simple work-related decisions, problem solving, and use of independent judgment. The claimant can tolerate ordinary levels of supervision in a customary workplace, and he can tolerate frequent, but not constant, interaction with co-workers. The claimant can tolerate occasional interaction with the general public, but cannot perform work where confrontation with the general public may be a natural occurrence such as resolution of customer disputes or "bouncer" type duties. Due to limitations in maintaining focus, attention and concentration, the claimant will be off task for up to five percent of the workday. The claimant cannot perform work that requires performing effectively under stress, as that phrase is used in the Dictionary of Occupational Titles.

*Id*. at 17. At step four, the ALJ found Plaintiff capable of performing past relevant work as a flagger. *Id*. at 22. Alternatively, at step five, the ALJ determined Plaintiff could perform the requirements of representative occupations such as cleaner II, cleaner/housekeeper, and

3

document preparer. *Id*. at 23-24. Therefore, the ALJ concluded Plaintiff has not been under a disability, as defined in the Act, from August 14, 2015, through the date of decision. *Id*. at 24.

      D.      **Plaintiff's Hearing Testimony**

During the hearing, Plaintiff testified he completed three years of college from 2008 to 2010, and then again in 2016. *Id*. at 52. He dropped out of college because of difficulty asking for help from professors and "difficulty asking questions in general." *Id*. at 55-56. He has difficulty engaging in social activities and interacting with others, is extremely uncomfortable in public, and tends to stay home if he can. *Id*. at 57. Plaintiff reported experiencing anxiety every day and is nervous when he has to interact with someone, including his parents. *Id*. at 58. He is afraid to draw attention to himself and worries how others perceive him. *Id*. at 58, 61. He experiences mood swings when he is anxious and gets anxious and irritable when others talk to him. *Id*. at 58, 64. When his anxiety is triggered, he experiences nausea, starts to sweat profusely, frequently urinates, and is very restless. *Id*. at 58. Plaintiff testified he feels depressed "half the days, or more," and that medication helps. *Id*. at 58-59. He has a hard time taking care of himself, keeping his room clean, and sleeping. *Id*. at 59-60. He is distracted by his own thoughts and constantly worries. *Id*. at 57. He also gets caught up in the details that do not matter and needs redirection to get back on task.

      E.      **Relevant Medical Opinions**

            1.      **Jeanne Shapiro, Ph.D.**

In November 2018, Plaintiff attended a consultative examination with Jeanne Shapiro, Ph.D., where he reported an inability to work due to social anxiety. *Id*. at 499. He stated he could dress, bathe, and groom himself, perform general cleaning and laundry, and was able to drive, but that he did not cook, go grocery shopping, or use public transportation. *Id*. at 502.

4

Socially, he reported getting along well with friends and family and spends his days following the news, reading, watching television, listening to the radio, using the computer, and going to appointments. *Id*.

During the examination, Plaintiff reported feeling anxious; his mood was tense and apprehensive. *Id*. at 501. On examination, his demeaner and responsiveness to questions were cooperative. *Id*. Plaintiff's manner of relating, social skills, and overall presentation were adequate. *Id*. His motor behavior was restless and fidgety. *Id*. Eye contact was appropriate. *Id*. His speech was fluent, quality of voice clear, and expressive and receptive language adequate. *Id*. His thought processes were coherent and goal directed with no evidence of delusions, hallucination, or disordered thinking. *Id*. Plaintiff's affect was of full range and congruent with his thoughts and speech. *Id*. His sensorium was clear and he was oriented. *Id*. His attention and concentration were intact. *Id*. He was able to do counting, simple calculations, and serial 7s from 100. *Id*. His recent and remote memory skills were intact. *Id*. He was able to recall three objects immediately and after four minutes, restate 6 digits forward and 5 digits backwards. *Id*. Plaintiff's intellectual functioning was estimated to be in the average range, his general fund of information appeared appropriate to experience. *Id*. Insight and judgment were fair. *Id*.

Dr. Shapiro opined Plaintiff had no limitation in understanding, remembering, or applying simple or complex directions and instructions; using reasoning and judgment to make work-related decisions; sustaining an ordinary routine and attendance at work; maintaining personal hygiene and wearing appropriate attire; and being aware of normal hazards and taking appropriate precautions. *Id*. at 502. She further opined Plaintiff had moderate limitations in interacting adequately with supervisors, coworkers, and the public; sustaining concentration and

performing a task at a consistent pace; and in regulating emotions, controlling behavior, and maintaining well-being. *Id*. The ALJ found Dr. Shapiro's opinion persuasive because it was supported and consistent with the record as a whole. *Id*. at 20.

### 2. K. Lieber-Diaz, Psy.D.

In November 2018, State agency medical consultant K. Lieber-Diaz, Psy.D., reviewed the record and found insufficient evidence to evaluate Plaintiff's DIB claim prior to December 31, 2017, and opined Plaintiff had no more than moderate limitation in any domain of mental functioning during the period under review of his SSI claim. *Id*. at 76-79, 87-91. Dr. Lieber-Diaz also opined the evidence did not establish the presence of the paragraph C criteria. *Id*. at 87. The ALJ found Dr. Lieber-Diaz' opinion for the period prior to December 31, 2017, unpersuasive because there was sufficient evidence of record to formulate an RFC, and found the opinion as to the remaining period persuasive because it was supported and consistent with the record as a whole. *Id*. at 20.

### 3. Robbi Tannenbaum Saletsky, Ph.D.

In October 2020, Robbi Tannenbaum Saletsky, Ph.D., Plaintiff's treating therapist since 2014, opined Plaintiff was unable to meet competitive standards in numerous work-related tasks, such as making simple work-related decisions; working in coordination with or in proximity to others without being unduly distracted; getting along with co-workers or peers; interacting with the general public, dealing with normal work stress; responding to changes in a routine work setting, and using public transportations. *Id*. at 681. She opined he had limited-but-satisfactory or seriously limited ability in all other work-related tasks, such as maintaining attention for two-hour segments, maintaining socially appropriate behavior, and remembering work-like procedures. *Id*. Dr. Saletsky explained:

6

> Tyler's previous work [and] academic history suggests that he has
> avoided situations when anxiety intensifies and he has left job[s] or
> quit school on numerous occasions. He currently rarely leaves his
> home, has not worked or gone to school in many years and remains
> socially isolated. He is ruminative and tends to engage in
> significant OCD checking behaviors throughout the day. It would
> be hard to imagine [him] working at a regular job.

*Id*. She further opined Plaintiff would be off-task more than 20% of the workday and absent from work about four days per month. *Id*. at 682. The ALJ found Dr. Saletsky's opinion unpersuasive because it was not supported by her own progress notes and it was inconsistent with the record as a whole. *Id*. at 21.

### F. Post-Hearing Evidence

Plaintiff submitted new evidence to the Appeals Council. *Id*. at 31-33, 39-46, 217-18. In her letter, Plaintiff's mother explained while Plaintiff attempted to live independently on four occasions, each time he failed. *Id*. at 43. She stated he could not manage his needs without significant support and further disputed various findings from the ALJ's decision. *Id*. at 39-46. In her letter, Plaintiff's sister documented her observations of Plaintiff's behavior and stated Plaintiff is currently unable to maintain routine changes; engage in conversations about thoughts and feelings in an open and meaningful way; adjust behavior to different social situations; and manage tasks such as paying bills, living independently, and practicing self-care. *Id*. at 31-33.

## II. STANDARD OF REVIEW

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). Accordingly, a reviewing court "'may

not substitute [its] own judgment for that of the [Commissioner], even if [it] might justifiably have reached a different result upon a *de novo* review.'" *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 52 (2d Cir. 2016) (summary order) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)). In other words, "[t]he substantial evidence standard means once an ALJ finds facts, [a reviewing court may] reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quotation and other citation omitted).

To be eligible for benefits, a claimant must show that he suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for his, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under the five-step sequential evaluation process, the ALJ determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or

> equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). The burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (citation omitted). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### III. DISCUSSION

Plaintiff asserts two points of error. (*See* Dkt. No. 15 at 3.) First, Plaintiff contends the ALJ erred in evaluating the paragraph C criteria for Plaintiff's impairments at step three. *Id*. at 11-16. Second, Plaintiff argues the Appeals Council erred in failing to consider additional evidence submitted post-hearing. *Id*. at 16-17. In response, the Commissioner contends the ALJ's decision applies the correct legal standards and is supported by substantial evidence. (Dkt. No. 18 at 10-21.) For reasons discussed herein, the Court agrees with the Commissioner.

#### A. Step Three

At step three of the sequential evaluation, the ALJ must determine whether the individual's severe impairment meets or equals the criteria of any listing. 20 C.F.R. §§ 404.1520, 416.920; *see* 20 C.F.R. § 404 Subpt. P, App. 1. If an individual's impairment, or combination of impairments, matches the requirements of the relevant listing, then the individual is disabled. *Id*. §§ 404.1520(d), 416.920(d). To meet a listing, the individual's impairment "must meet *all* of the specified medical criteria. An impairment that manifests only some of

9

those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). It is the plaintiff's burden to establish that his medical condition or conditions meet all of the specific medical criteria of the particular listed impairments. *Pratt v. Astrue*, No. 7:06-CV-551 (LEK/DRH), 2008 WL 2594430, at *6 (N.D.N.Y. June 27, 2008).

At step three of the sequential evaluation, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically-equaled the severity of a listed impairment. (T. at 14-17.) In making this determination, the ALJ considered listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse control disorders), 12.10 (autism spectrum disorder), and 12.11 (neurodevelopment disorders). *Id*. The ALJ followed the "special technique" established by the agency for determining whether Plaintiff suffered from a listed impairment. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The special technique includes determining the functional limitations imposed by a claimant's impairments in each of four broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. *Id*. To meet the severity of a listed impairment, Plaintiff must have at least two "marked" limitations or one "extreme" limitation in the broad areas of functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, 12.08, 12.10, 12.11. Based on the record, the ALJ found that Plaintiff had "mild" or "moderate" limitations in all of the broad areas cited above. (T. at 15-16.) Therefore, the ALJ found Plaintiff did not satisfy the paragraph B criteria of the listings. *Id*. at 16.

The ALJ also considered whether the paragraph C criteria was satisfied. *Id*. at 16. A mental impairment satisfies the paragraph C criteria if it is "serious and persistent," established by a medically documented history of the existence of the disorder over a period of at least two

years, with evidence of both ongoing treatment and marginal adjustment, meaning "minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.04C, 12.06C.[2] The ALJ found "the record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life." (T.at 16.) Therefore, the ALJ found Plaintiff did not establish the presence of the paragraph C criteria. *Id*.

Plaintiff argues the ALJ failed to properly analyze the paragraph C criteria and instead made a boiler plate recitation of the paragraph C criteria without mention of any evidentiary support. (Dkt. No. 15 at 11-16.) According to Plaintiff, such error requires remand. *Id*. at 14-16. Plaintiff contends the error is also harmful because he satisfies the paragraph C criteria and should have been found disabled at step three. *Id*. at 16. The Court disagrees.

To be sure, while cursory treatment of the paragraph C criteria may be a basis for remand in certain circumstances, contrary to Plaintiff's assertion, such remands are not necessarily required. *See Ruiz v. Comm'r of Soc. Sec.*, --- F. Supp. 3d ----, No. 20 CIV. 7638 (GWG), 2022 WL 4076323, at *5 (S.D.N.Y. Sept. 6, 2022); *Matthew S. S. v. Comm'r of Soc. Sec.*, No. 6:21-CV-0014 (TJM/ML), 2022 WL 686704, at *4 (N.D.N.Y. Jan. 20, 2022) ("An ALJ is not required, in every instance, to provide an express explanation for his conclusion that a claimant's impairments fail to meet or equal the requirements of a Listing."), *report and recommendation adopted*, 2022 WL 685416 (N.D.N.Y. Mar. 8, 2022). Although "an ALJ 'should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment,' the absence of an express rationale for an ALJ's conclusions does not prevent [the court] from

---

[2] Listings 12.08, 12.10, and 12.11 do not have associated paragraph C criteria. *See* 20 C.F.R. § 404 Subpt. P, App. 1, §§ 12.08, 12.10, 12.11.

11

upholding them so long as [the court] is 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'" *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)); *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) ("An ALJ's unexplained conclusion [at step three] of the analysis may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence."); *see also Schildwachter v. Berryhill*, No. 17-CV-07277, 2019 WL 1116256, at *7 (S.D.N.Y. Feb. 8, 2019) (finding harmless error where ALJ failed to explicitly assess paragraph C criteria in order to determine the plaintiff's listing eligibility, in light of other portions of ALJ's decision and clearly credible evidence indicating that plaintiff could not meet required criteria); *Ivey v. Comm'r of Soc. Sec.*, No. 1:19-CV-00657 (EAW), 2020 WL 5046261, at *10 (W.D.N.Y. Aug. 27, 2020) ("[w]hile the ALJ did not set forth a detailed explanation regarding the paragraph (c) criteria, the basis for the ALJ's determination is easily discernible from the record.").

Here, the Court finds no reversible error in the ALJ's assessment of the paragraph C criteria. Plaintiff certainly has long-standing mental impairments. However, the ALJ found the record does not establish Plaintiff "has only marginal adjustment, that is, a minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life." (T. at 16.) "In order to experience marginal adjustment, any changes in a plaintiff's environment must have led to a deterioration in functioning and an inability to function outside the home or led to a 'significant' change in medication or other treatment." *Frederick C. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1078 (CFH), 2021 WL 466813, at *7 (N.D.N.Y. Feb. 9, 2021). "Courts in this Circuit routinely have found that no reasonable fact finder could conclude that a plaintiff

could meet this standard when, *inter alia*, the plaintiff functioned mostly independently, including by shopping, going online, traveling independently and managing money, and was observed to have goal-directed thoughts." *Campbell v. Comm'r of Soc. Sec.*, No. 1:19-CV-03215 (SDA), 2020 WL 5641200, at *12 (S.D.N.Y. Sept. 22, 2020) (collecting cases).

At step three and beyond, the ALJ noted Plaintiff was able to complete two to three years of college, he could care for himself and his personal hygiene, clean his room, prepare meals, shop, drive, play video games, spend time with friends and family, live with others, and manage his own medical care. *Id*. at 15, 60, 62, 64, 321-23, 463, 477-78, 492-93, 499-503, 508, 516-18, 525, 528-33, 540-54, 552-57, 563, 568-72, 583-89, 615, 623-24, 626-01, 630-31, 669-72, 674, 732, 1033, 1076, 1086-1102, 1191-93, 1220. He followed instructions and responded to questions from multiple medical professionals and his memory was routinely noted to be normal. *Id*. at 15, 501, 508-09, 516-17, 540-46, 499-503, 552-56, 568-72, 626-30, 802-04, 810-12, 833-43, 1086-1102. He had a good rapport with multiple medical providers and was often described as pleasant, cooperative, and friendly. *Id*. at 15, 321, 329, 332, 362, 367, 370, 377, 382, 501, 568-71, 626-30, 678, 691, 694, 700.

Additionally, mental status examinations routinely noted that although Plaintiff's mood was anxious, his speech was normal, his thought processes were logical and linear, his memory, attention, and concentration were good, and his insight and judgment were intact. (T. at 18, 445-450, 504-07, 516-17, 523-24, 528-33, 568-572, 626-30, 810-12, 820-22, 833-43, 1075-80, 1090-1102.) His symptomology improved with regular therapy, medications, and exposure therapy including going to the dentist, trying on running shoes at the mall, walking on a nature trail, going to social events, going out with friends, working for a neighbor, and engaging in superficial social interactions with strangers. *Id*. at 18, 438-39, 454, 552-57, 588-89, 600-04,

13

623-24, 630-61, 670, 912, 995, 1062, 1156, 1194, 1190-94, 1198. Plaintiff reported that he was able to focus and concentrate on activities that interested him; he did need hydroxyzine to help with his anxiety, and clomipramine helped decrease his worried thoughts. *Id*. at 19, 492, 615-619, 626-630. Plaintiff had never required inpatient or intensive outpatient hospitalization to manage his impairments. *Id*. at 22.

Accordingly, the ALJ properly evaluated the paragraph C criteria and supportably concluded the record fails to show that Plaintiff experienced "marginal adjustment." *See Ivey v. Comm'r of Soc. Sec.*, 2020 WL 5046261, at *10 (finding that "[b]ased on the ALJ's findings and the evidence of record, no reasonable fact finder could have found that Plaintiff had the marginal adjustment necessary to satisfy the paragraph (C) criteria" where the plaintiff, *inter alia*, successfully completed three college courses, traveled independently by bus, and visited the library regularly); *Jeffrey v. Berryhill*, No. 1:18-CV-0115 (LEK), 2019 WL 2210593, at *7-8 (N.D.N.Y. May 22, 2019) (finding the plaintiff did not demonstrate "marginal adjustment" under paragraph C criteria where the plaintiff's daily activities included managing money, playing poker, using his computer, driving a car, shopping, cooking, fishing, walking the dogs, cleaning his clothes, and vacuuming, and medical evidence indicated the plaintiff's good concentration, intact memory, normal thought content, and goal oriented thought processes); *Mitchell v. Berryhill*, No. 16-CV-6588, 2018 WL 3300683, at *18 (S.D.N.Y. Feb. 2, 2018) (finding claimant did not have marginal adjustment where claimant had interactions with family and friends at church, logical thought processes, intact judgment, good concentration, and could cook, clean, shop, and do laundry), *adopted sub nom.*, *Mitchell v. Colvin*, 2018 WL 1568972 (S.D.N.Y. Mar. 30, 2018) *Gabriel C. v. Comm'r of Soc. Sec.*, No. 6:18-CV-671 (ATB), 2019 WL 4466983, at *8 (N.D.N.Y. Sept. 18, 2019) (finding "no reasonable fact finder could have found that plaintiff had

14

marginal adjustment" as examinations showed largely intact functioning, plaintiff had never "been hospitalized for a mental episode," and he could complete daily activities, like attend college classes, drive a vehicle, "prepare simple meals, socialize with a few close friends," and "care for his cat").

Plaintiff's citation to the record does not compel a different conclusion. (Dkt. No. 15 at 13-14.) Plaintiff asserts he meets "marginal adjustment" because [t]he record shows [he] attempted to complete higher education twice and failed due to his inability to function outside of his home." *Id*. at 14.[3] However, as the Commissioner points out, the record evidence shows numerous instances of Plaintiff engaging independently in a wide range of activities outside of the home without decompensating. (Dkt. No. 18 at 14-15; *see, e.g.*, T. at 838 (January 2016 therapy note indicating plaintiff "continues to attend college and is doing well academically"); *id*. at 454, 670, 912, 995, 1062, 1102, 1194, 1198 (therapy notes from relevant period indicating Plaintiff traveled to Florida to visit a friend, spent time at a local bar, attended several beer festivals, a family reunion, a funeral, attended parties, helped his friend move items).) At bottom, Plaintiff's argument amounts to a disagreement with the ALJ's consideration of conflicting evidence in the record, which is not this Court's function. *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) (citing *Carroll v. Sec'y of Health & Humans Servs.*, 705 F.2d

---

[3] *See, e.g.*, T. at 40-41 (Plaintiff's mother's letter submitted post-hearing explaining, "[i]t took five or six years of attending, failing, and dropping out to come up with two or maybe three years worth of college credits."), T. at 52 (Plaintiff testifying he attended college in 2008-10 and 2016), T. at 55-56 (Plaintiff testifying he "ended up failing out" because he had difficulty asking for help, asking questions, was afraid to raise his hand in class, or draw attention to himself), T. at 108 (previous unfavorable decision, dated August 13, 2015, noting Plaintiff's mother indicated "he lived in an environment full of dirty clothes, dishes, and garbage" in college), T. at 326-27 (January 2014 report of Carole Resnick, Ph.D., stating that "Over his 2 years away at college, Tyler's ability to maintain adequate grades and independent functioning deteriorated."); T. at 682, 687 (Dr. Saletsky and primary care physician checking "yes" when asked if Plaintiff had repeated episodes of deterioration or decompensation in work or work-like settings which cause the patient to withdraw from the situation or experience exacerbation of signs and symptoms).

638, 642 (2d Cir. 1983)).

Based on the foregoing, the ALJ's step three determination was supported by substantial and remand is not required.

### B.     New Evidence Submitted to the Appeals Council

At the final stage of the administrative process of adjudicating claims for benefits under the Act, the regulations authorize a claimant to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision.  20 C.F.R. §§ 404.970(b), 416.1470(b).  "If the new evidence relates to a period before the ALJ's decision, the Appeals Council 'shall evaluate the entire record including the new and material evidence submitted . . . [and] then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'"  *Tammie S. v. Berryhill*, No. 3:18-CV-174 (CFH), 2019 WL 859263, at *5 (N.D.N.Y. Feb. 22, 2019) (quoting *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996)).  "[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner's] final decision."  *Id*.; *see also* §§ 404.981, 416.1481.

"The role of the district court is to determine if the Appeals Council erred when it determined that the new evidence was insufficient to trigger review of the ALJ's decision." *Allborty v. Comm'r of Soc. Sec.*, No. 6:14-CV-1428 (DNH/ATB), 2016 WL 770261, at *8 (N.D.N.Y. Jan. 28, 2016), *report-recommendation adopted*, 2016 WL 796071 (N.D.N.Y. Feb. 22, 2016) (citation omitted).  As such, "the issue before the Court is whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require the [Appeals Council] to take the case." *Canady v. Comm'r of Soc. Sec.*, No. 1:17-CV-0367 (GTS/WBC), 2017 WL 5496071, at *11 (N.D.N.Y. Oct. 4, 2017), *report-recommendation adopted*, 2017 WL 5484663 (N.D.N.Y. Nov. 14, 2017); *see also Bruce C. v. Kijakazi*, No. 3:20-CV-782 (DJS), 2021

WL 5112077, at *6 (N.D.N.Y. Nov. 3, 2021) ("When addressing the Appeals Council's consideration of new evidence, the Court must consider whether evidence is new and material, *i.e.*, was likely to affect the ALJ's determination.") (citing *Brown ex rel. S.W. v. Astrue*, 2008 WL 3200246, at *14 (N.D.N.Y. Aug. 5, 2008)).

Here, in seeking review of the ALJ's unfavorable decision, Plaintiff submitted third-party statements from his mother and sister. (T. at 31-33, 39-46, 303-07.) In denying review of the ALJ's decision, the Appeals Council acknowledged Plaintiff's submission of new evidence. *Id*. at 2. However, the Appeals Council concluded "this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." *Id*. Plaintiff argues the Appeals Council erred by failing to consider additional evidence submitted post-hearing as it was new, material, and relevant. (Dkt. No. 15 at 16-17.) To that end, Plaintiff claims the "letters provided further support for a finding that Plaintiff met the criteria required by paragraph C of the mental health listings. The letters are also additional evidence consistent with the opinion offered by Dr. Saletsky. This means that had they been reviewed, they likely would have changed the outcome of the ALJ's decision." *Id*. at 17. However, as the Commissioner points out, while Plaintiff believes that his mother's and sister's personal observations would merit a change in the outcome of his case, he fails to explain *how* that is so. (Dkt. No. 18 at 19.) *See also Zain P. v. Saul*, No. 20-CV-430, 2021 WL 1850780, at *4 (W.D.N.Y. May 10, 2021).

At the outset, the new evidence submitted by Plaintiff's mother and sister largely tracks evidence already in the record in that they describe Plaintiff's long history of mental health impairments, his diagnosis, his inability to obtain a college degree, his trouble with executive functioning, performing daily tasks, managing a routine, navigating social situations, and

maintaining employment. Moreover, while Plaintiff contends the letters are "additional evidence consistent with the opinion offered by Dr. Saletsky," the ALJ found the extremely limiting opinion of Dr. Saletsky unpersuasive because it was not supported by her own progress notes and was inconsistent with the record, including examinations conducted by other physicians and Plaintiff's wide-ranging activities. (T. at 21, 680-84.) Accordingly, this Court cannot say that the new evidence alters the weight of the evidence so dramatically that the ALJ's decision ceases to be supported by substantial evidence. *Lisa C. v. Kijakazi*, No. 3:21-CV-0037 (ATB), 2022 WL 2105853, at *9 (N.D.N.Y. June 10, 2022).

Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault*, 683 F.3d at 448. Plaintiff has failed to do so.

Based on the foregoing, the third-party statements do not show a reasonable probability of changing the ALJ's decision, where, as discussed above, it was also consistent with other evidence in the record including the largely benign mental status examination findings of record, Plaintiff's wide-ranging social and daily activities, and the opinions of the State Agency physicians and consultative examiner Dr. Shapiro, all of which constitute substantial evidence. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 110 (2d Cir. 2020) (affirming the district court's upholding of the ALJ's decision where the Appeals Council declined the plaintiff's

request to review additional evidence where there was not a reasonable probability the records would have changed the ALJ's decision because the records did not undermine the ALJ's decision).

Therefore, the new evidence submitted to the Appeals Council does not present grounds for remand. *Rutkowski v. Astrue*, 368 Fed. App'x. 226, 229 (2d Cir. 2010) (evidence submitted to the Appeals Council did not "add so much as to make the ALJ's decision contrary to the weight of the evidence.").

**WHEREFORE**, based on the foregoing, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) be **DENIED**; and it is further

**RECOMMENDED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) be **GRANTED**; and it is further

**RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**; and it is further

**ORDERED** that the Clerk of the Court serve copies of this Report-Recommendation on the parties in accordance with the Local Rules. Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: January 27, 2023
         Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge